1
2
3
4
5
6
7
8             **UNITED STATES DISTRICT COURT**

9             **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   BARRON SIMMONS,                          Civil No.    10cv1795-DMS (BGS)

12                            Petitioner,

13   v.                                        **REPORT AND
                                               RECOMMENDATION OF UNITED**
14   ANTHONY HEDGPETH, Warden,                 **STATES MAGISTRATE JUDGE TO
                                               DENY PETITION FOR WRIT OF**
15                            Respondent.       **HABEAS CORPUS**

16

17        This Report and Recommendation is submitted to United States District Judge Dana

18   M. Sabraw pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule HC.2.

19                            **I.  INTRODUCTION**

20        Barron Simmons (herein "Simmons") is a state prisoner proceeding *pro se* on a

21   Petition for a Writ of Habeas Corpus (herein "Petition") pursuant to 28 U.S.C. § 2254.  (Doc.

22   No. 1 at 1.)  For the reasons discussed below, the Court recommends that the Petition be

23   **DENIED** and that this action be **DISMISSED WITH PREJUDICE**.

24                        **II.  PROCEDURAL BACKGROUND**

25        On July 10, 2007, a San Diego Superior Court jury found Simmons guilty of corporal

26   injury to a spouse or roommate (Cal. Penal code § 273.5(a)), dissuading a witness by force or

27   threat (Cal. Penal Code § 136.1(c)(1)), making a criminal threat (Cal. Penal Code § 422),

28   felony false imprisonment (Cal. Penal Code §§ 236, 237(a)), evasion of a peace officer while

1    driving in willful or wanton disregard for the safety of persons or property (Cal. Vehicle

2    Code § 2800.2(a)), and violation of a protective or stay away order (Cal. Penal Code §

3    166(c)(1)). Lodgment 2, Rep.'s Tr. Vol. 9, 995-97; Lodgment 1, Clerk's Tr. 200-02. After

4    the verdicts, Simmons admitted allegations that he had served two prior prison terms (Cal.

5    Penal Code § 667.5(b)), had one prior serious felony conviction (Cal. Pen. Code § 667(a)(1)),

6    and had one prior strike conviction (Cal. Penal Code §§ 667(b)-(i), 1170.12(a)-(d)).

7    Lodgment 2, Rep.'s Tr. Vol. 9, 1009-12; Lodgment 1, Clerk's Tr. 212. On March 28, 2008,

8    the trial court sentenced Simmons to state prison for twenty-two years and four months.

9    Lodgment 2, Rep.'s Tr. Vol. 9, 1040-42; Lodgment 1, Clerk's Tr. 165-66, 216.

10        Simmons filed an appeal with the California Court of Appeal, Fourth Appellate

11   District, Division One. Lodgment 3. Simmons' appeal claimed that the trial court erred when

12   it instructed the jury, pursuant to CALCRIM 852, that the jury was permitted to use the

13   evidence of past domestic violence as propensity evidence. *Id.* at 1. Pursuant CALCRIM 852,

14   if the jury concluded appellant had a disposition to engage in domestic violence, they could

15   also conclude he was likely to commit, and did commit, the charged offenses (other than

16   reckless driving). *Id.* at 1. Simmons claimed the jury should not have been instructed to

17   consider the past incidents with respect to the charge of dissuading a witness (count seven),

18   because this charge does not qualify as "an offense involving domestic violence" under

19   California Evidence Code section 1109. *Id.* Simmons further claimed that allowing the jury

20   to use the past incidents, proved by a preponderance of the evidence, to infer Simmons was

21   likely to commit and did commit the charged offenses (other than reckless evading),

22   confused and misled the jury regarding the prosecution's burden of proof, as well as deprived

23   Simmons of a fair trial, in violation of his due process rights. *Id.* at 1-2. On June 22, 2009,

24   the California Court of Appeal found the trial court did not deny Simmons his right to due

25   process by instructing the jury pursuant to CALCRIM No. 852, and affirmed Simmons'

26   conviction. Lodgment 6 at 7-8.

27

28

1   Simmons filed a petition for review in the California Supreme Court. Lodgment 7. On

2   September 9, 2009, the California Supreme Court denied the petition for review without

3   comment. Lodgment 8.

4   Thereafter, Simmons filed  a petition for writ of habeas corpus in the San Diego

5   County Superior Court. Lodgment 9. On June 25, 2010, the court denied the petition in a

6   reasoned decision. Lodgment 10 at 6. Simmons filed a petition for writ of habeas corpus in

7   the California Court of Appeal, Fourth District, Division One. Lodgment 11. On October 6,

8   2010, the California Court of Appeal denied the petition in a reasoned decision. Lodgment

9   12. Simmons also filed a petition for writ of habeas corpus in the California Supreme Court.

10  Lodgment 13. On May 11, 2011, the California Supreme Court denied the petition without

11  comment, citing *People v. Duvall*, 9 Cal. 4th 464, 474 (1995), *In re Swain*, 34 Cal. 2d 300,

12  304 (1949), *In re Waltreus*, 62 Cal.2d 218, 225 (1965), and *In re Dixon*, 41 Cal. 2d 756, 759

13  (1953). Lodgment 14.

14  On August 26, 2010, Simmons filed a petition for writ of habeas corpus in this Court.

15  Doc. No. 1. This Court granted Simmons' motion to stay the federal proceedings so that he

16  could exhaust his state remedies. Doc. No. 7. Simmons subsequently exhausted his state

17  remedies. On July 30, 2012, this Court directed Respondent to file a response to the

18  exhausted petition. Doc. No. 14.

19  ### III.  FACTUAL BACKGROUND

20  The victim, Erica Dennis, met Simmons in 1997 when she was sixteen years old and

21  Simmons was thirty years old. Lodgment 2, Rep.'s Tr. Vol. 4, 215-16. Erica had an infant

22  son at the time she met Simmons, and gave birth to a second son in 2002. *Id.* at 213, 215.

23  Simmons is not the father of either child. *Id.* at 216. When Erica first met Simmons, he was

24  very kind to her. *Id.* at 215. Over time, however, Simmons developed a bad temper. *Id.* at

25  230-32, 235-36.

26  Between June 4, 2000, and the events on February 24, 2007, and April 16, 2007, that

27  formed the basis for the charges in this case, there has been a history of physical and verbal

28  abuse directed towards Erica by Simmons. Lodgment 2, Rep.'s Tr. Vol. 5, 378-81, 490-93.

1   Despite the violence, Simmons and Erica got married on July 8, 2000, but subsequently

2   divorced on April 20, 2005. *Id.* at 365, 386-87. The two continued to see each other after the

3   divorce and in July 2005, Child Protective Services ("CPS") removed Erica's two children

4   from her care because of her continued involvement with Simmons. Lodgment 2, Rep.'s Tr.

5   Vol. 4, 223-24. On November 3, 2006, a restraining order was issued requiring Simmons to

6   stay at least one hundred yards away from Erica and to refrain from contacting her in any

7   manner. *Id.* at 225-26; Lodgment 2, Rep.'s Tr. Vol. 8, 849; Lodgment 1 at 85-86. Simmons

8   and Erica continued to live together after the restraining order was issued despite the fact that

9   a condition of reunification with her sons was that Erica had to end her relationship with

10  Simmons. Lodgment 2, Rep.'s Tr. Vol. 4, 225, 227-28.

11          On February 5, 2007, Erica's mother Dorothy began to spend most nights at Erica's

12  apartment. *Id.* at 245, 248-49. On February 24, 2007, Simmons got angry at Erica after she

13  had been out all morning running errands with her mother. *Id.* at 269-70. Erica asked

14  Simmons to leave but he refused. *Id.* at 271-272. When Erica threatened to call the police,

15  Simmons took the phone and proceeded to punch Erica in the chest with a closed fist and

16  then repeatedly in the ribs and head while on top of her on the bed. *Id.* at 277-80. When Erica

17  tried to defend herself, Simmons put a pillow over her face and told her to "shut up." *Id.* at

18  286. Dorothy went into the bedroom and pulled Simmons away from Erica and they

19  attempted to leave the apartment. Lodgment 2, Rep.'s Tr. Vol. 6, 636-40. As Dorothy and

20  Erica attempted to leave the apartment, Simmons stood in the doorway blocking their exit

21  and threatening to "kill [them] both." *Id.* at 640. Simmons grabbed a knife from the kitchen

22  and  continued to threaten Dorothy and Erica. Lodgment 2, Rep.'s Tr. Vol. 4, 296-97. Erica

23  sprayed Simmons in the face with pepper spray that she had bought to protect herself from

24  Simmons, and attempted to run away. *Id.* at 303-04. Simmons ran after Erica and punched

25  her in the back with a closed fist and threatened to kill her. *Id.* at 306. While Simmons was

26  rinsing out his eyes, Erica and Dorothy ran out of the apartment. *Id.* at 307-10. By the time

27  Erica left the apartment, she had a bad headache, her inner lip was broken, she had a lump on

28

her head, and there were bruises on her legs, upper chest and the left side of her rib cage. *Id.* at 318-19, 323.

Dorothy and Erica drove away from the apartment and used Dorothy's cell phone to call 911. *Id.* at 312-14; Lodgment 2, Rep.'s Tr. Vol. 6, 650; Lodgment 2, Rep.'s Tr. Vol. 7, 710, 725. Anthony Morasco, a patrol officer with the San Diego Police Department, responded to the call shortly after 8:00 p.m. Lodgment 2, Rep.'s Tr. Vol. 6, 651; Rep.'s Tr. Vol. 7, 722, 725. After speaking with Erica and Dorothy, officer Morasco found Simmons driving south on Euclid Avenue. Lodgment 2, Rep.'s Tr. Vol. 7, 731-32. When Simmons spotted the patrol car, he sped up, straddling the center lane marker so the left side of the vehicle was facing oncoming traffic. *Id.* at 732. Simmons turned down a residential side street. Simmons was traveling approximately eighty miles per hour on a thirty mile per hour street. *Id.* Simmons made a turn onto another residential side street. Simmons traveled at speeds of over sixty miles per hour on a twenty-five mile per hour street. *Id.* at 736-37. As Simmons reached a sharp turn, he was unable to negotiate the turn and crashed into the fence of a house. *Id.* at 737. When Simmons' car began to skid, it was traveling at a minimum speed of fifty-four to fifty-five miles per hour. Lodgment 2, Rep.'s Tr. Vol. 8, 849-50.

When Simmons' car came to a stop, Simmons exited the vehicle and tried to get away on foot. Simmons jumped fences and ran through backyards. Lodgment 2, Rep.'s Tr. Vol. 7, 741-42. It took a dozen other police units, including a canine unit and a police helicopter, to locate Simmons. *Id.* at 745. Simmons was found hiding in bushes in a canyon. Officer Morasco placed Simmons under arrest. *Id.* at 746.

On the afternoon of April 16, 2007, Simmons telephoned Erica from the San Diego County jail. Lodgment 2, Rep.'s Tr. Vol. 5, 402; Lodgment 2, Rep.'s Tr. Vol. 7, 825. Simmons asked Erica, "Why the fuck don't you listen to me?" He told Erica to find her "fuck'n mother." Lodgment 1 at 70.02. Simmons said "I'm looking at years. I'll kill you bitch...I'm gonna murder you and your mama, if I got to do these years...I didn't break into my own house, bitch. I live there. You need to quit playing these dumb ass ho' games." *Id.* at 70.03. Simmons ordered Erica to "call my mother-fucking lawyer" and gave her a telephone

number. *Id.* Simmons added, "[a]nd don't get your ass on the stand nor your mama. Do you understand that?" *Id.* Although both Erica and Dorothy were subpoenaed for Simmons' preliminary hearing, scheduled for 8:15 a.m. on April 17, 2007, neither appeared in court on that date. Lodgment 2, Rep.'s Tr. Vol. 5, 404, 406; Lodgement 2, Rep.'s Tr. Vol. 6, 654.

Simmons continued to make repeated telephone calls to Erica, the last while the trial was in recess over the weekend. Lodgment 2, Rep.'s Tr. Vol. 5, 396-99. In one call, Simmons made statements like, "the police are looking for you, so don't have any contact with them." *Id.* at 405. As of June 27, 2007, Simmons made over 5300 calls to Erica's number. Lodgment 2, Rep.'s Tr. Vol. 7, 828.

Simmons has a history of domestic violence towards other women. In June 2002, while Simmons and Erica were temporarily living apart, Simmons began dating a woman named Genevieve B. Lodgment 2, Rep.'s Tr. Vol. 6, 673-75. On September 6, 2002, Simmons accused Genevieve of spending the day with her ex-boyfriend while Simmons was at work. *Id.* at 676-77. Simmons later apologized and asked Genevieve if she had made him dinner. *Id.* at 680. Genevieve said she had not and Simmons got angry. *Id.* at 680-81. Simmons walked up to Genevieve and slapped her two or three times on the left side of the face. *Id.* at 680-81, 684. Genevieve's cheek became swollen and the inside of her lip was cut. *Id.* at 686. When Genevieve tried to call the police, Simmons grabbed the phone and broke it. *Id.* at 681-82. When Genevieve attempted to leave, Simmons blocked her exit out the front door and the bedroom window. *Id.* at 683-84. Genevieve finally convinced Simmons to let her go. *Id.* at 684. Genevieve went to a friend's house and called the police. *Id.* at 685. By the time police arrived at Genevieve's house, Simmons had taken all her jewelry and left. *Id.* at 686.

### IV. PETITIONER'S CLAIMS

Simmons presents four grounds for habeas relief. Fist, Simmons claims that the trial court violated his due process rights by instructing the jury pursuant to CALCRIM No. 852 [Evidence of Uncharged Domestic Violence]. Doc. No. 1 at 6. Second, Simmons claims that his trial counsel rendered ineffective assistance by: (a) failing to call certain witness to testify

on his behalf; (b) failing to challenge the instruction given to the jury pursuant to CALCRIM No. 852; (c) failing to challenge certain witness testimony; (d) failing to request that the court dismiss his prior "strike" conviction; (e) failing to maintain adequate communication with Simmons; and (f) making lewd acts and statements during trial. *Id.* at 7. Third, Simmons claims that his sentence was improper because: (a) the counts should have been sentenced concurrently rather than consecutively; (b) the use of Simmons' prior convictions to enhance his sentence violated the Double Jeopardy Clause; and (c) the sentence as a second strike offender constituted cruel and unusual punishment. *Id.* at 8 Fourth, Simmons claims that he was denied his Due Process and Equal Protection rights because there were no African-Americans in the pool of jurors called to serve on his case. *Id.* at 9

## V.  STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which effected amendments to the federal habeas statutes, applies to the present Petition because Simmons filed it after AEDPA's effective date—April 26, 1996. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). "By its terms [AEDPA] bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." *Harrington v. Richter*, ——U.S. ——, 131 S.Ct. 770, 784, 178 L.Ed.2d 624 (2011).

A federal court may review a habeas petition by a person in custody under a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Federal habeas relief is not available for state law errors. *Swarthout v. Cook*, —— U.S. ——, 131 S.Ct. 859, 861, 178 L.Ed.2d 732 (2011) (per curiam) (citing *Estelle v. McGuire*, 502 U.S. 62, 67 (1991)).

Under AEDPA, a federal court may not grant habeas relief on a claim adjudicated on its merits in state court unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"Clearly established federal law" means federal law that is clearly defined by the holdings of the Supreme Court at the time of the state court decision. *See, e.g., Cullen v. Pinholster*, ––– U.S. –––, 131 S.Ct. 1388, 1399, 179 L.Ed.2d 557 (2011) (citation omitted). Although only Supreme Court law is binding, "circuit court precedent may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." *Stanley v. Cullen*, 633 F.3d 852, 859 (9th Cir. 2011) (citation omitted).

In determining whether a decision is "contrary to" clearly established federal law, a reviewing court must evaluate whether the decision " 'applies a rule that contradicts [such] law' " and how the decision "confronts [the] set of facts that were before the state court." *Cullen*, 131 S.Ct. at 1399 (quoting *Williams v. Taylor*, 529 U.S. 362, 405, 406 (2000)). If the state decision " 'identifies the correct governing legal principle' in existence at the time," a reviewing court must assess whether the decision " 'unreasonably applies that principle to the facts of the prisoner's case.' " *Id*. (quoting *Williams*, 529 U.S. at 413).  An "unreasonable application" of law is " 'different from an incorrect application' " of that law.  *Richter*, ––– U.S. –––, 131 S.Ct. at 785 (quoting *Williams*, 529 U.S. at 410). Similarly, a state-court decision based upon a factual determination may not be overturned on habeas review unless the factual determination is " 'objectively unreasonable in light of the evidence presented in the state-court proceeding.' " *Stanley*, 633 F.3d at 859 (quoting *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004)).

The AEDPA standard requires a high level of deference to state court decisions, such that a state decision that a claim lacks merit precludes federal habeas relief so long as "'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 131 S.Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Accordingly, to obtain federal habeas relief, a state prisoner must show that the state court's decision on a federal claim was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 786–87.  Moreover, even if this Court finds such a state-court error of clear constitutional

1    magnitude, habeas relief is not available unless the error "had substantial and injurious effect

2    or influence in determining the jury's verdict." *Fry v. Pliler*, 551 U.S. 112, 116 (2007)

3    (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).

4         By contrast, "a state's court interpretation of state law, including one announced on

5    direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.

6    *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (reversing the Sixth Circuit's determination that

7    the doctrine of transferred intent was inapplicable to aggravated felony murder under Ohio

8    law). So long as a state court's application of state law was not novel or an unforeseeable

9    expansion of prior decisions, a petitioner may not receive federal relief for issues of state

10   law. *Id.* at 76-77 (distinguishing *Bouie v. City of Columbia*, 378 U.S. 347, 352 (1964)).

11        Where more than one state court has adjudicated the petitioner's claims, the federal

12   habeas court analyzes the last reasoned decision. *Barker v. Fleming*, 423 F.3d 1085, 1091

13   (9th Cir. 2005) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991), for presumption that

14   later unexplained orders, upholding judgment or rejecting same claim, rest upon same ground

15   as the prior order). Thus, a federal habeas court looks through ambiguous or unexplained

16   state court decisions to the last reasoned decision in order to determine whether that decision

17   was contrary to or an unreasonable application of clearly established federal law. *Medley v.*

18   *Runnels,* 506  F.3d 857, 862 (9th Cir. 2007); *Bailey v. Rae*, 339 F.3d 1107, 1112–13 (9th Cir.

19   2003).

20        Yet, when "no state court has explained its reasoning on a particular claim, [the

21   federal habeas court must] conduct an independent review of the record to determine whether

22   the state court's decision was objectively unreasonable."  *Hein v. Sullivan*, 601 F.3d 897, 905

23   (9th Cir. 2010).

## VI.  ANALYSIS

25        When applying the AEDPA standard, the federal court should review the "last

26   reasoned decision" by a state court. *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir.

27   2004). "[D]etermining whether a state court's decision resulted from an unreasonable legal or

28   factual conclusion does not require that there be an opinion from the state court explaining

1  the state court's reasoning." *Richter*, 131 S.Ct. at 784. "Where a state court's decision is

2  unaccompanied by an explanation, the habeas petitioner's burden still must be met by

3  showing there was no reasonable basis for the state court to deny relief." *Id.* The relevant

4  decision for Simmons' first claim is that of the California Court of Appeal. Lodgment 6.

5  Claims 2 through 4 were not presented on direct appeal, but were presented to the California

6  Supreme Court in a petition for writ of habeas corpus (Lodgment 13), which was summarily

7  denied (Lodgment 14).

8    **1.   THE TRIAL COURT'S INSTRUCTION REGARDING UNCHARGED ACTS OF DOMESTIC VIOLENCE DID NOT VIOLATE SIMMONS' CONSTITUTIONAL RIGHTS**

9         The acts of domestic violence Simmons committed against Erica before February 24,

10  2007, and his acts of domestic violence against Genevieve B., were introduced under

11  California Evidence Code section 1109.[1] Lodgment 2, Rep.'s Tr. Vol. 2, 67, 69, 71, 74, 78-

12  79. Simmons contends that the trial court violated his due process rights by instructing the

13  jury pursuant to CALCRIM No. 852, that the jury is permitted, but is not required to,

14  consider evidence of past acts of domestic violence if they found by a preponderance of the

15  evidence that Simmons committed those acts. Doc. No. 1 at 19. The trial court expressly

16  excluded from the instruction count 5, felony evading a peace officer, because it was not a

17  crime involving domestic violence. Lodgment 2, Rep.'s Tr. Vol. 9, 907-09; Lodgment 1,

18  Clerk's Tr., 102-03. Simmons claims, however, that the jury should not have been allowed to

19  consider past incidents of domestic violence with respect to the charge of witness

20  intimidation (count seven), because this charge was not, under the circumstances in this case,

21  an offense involving domestic violence. *Id.* Additionally, Simmons also claims CALCRIM

22  No. 852 confused and misled the jury regarding the prosecution's burden of proof, therefore

23  violating his due process rights. *Id.* at 19-20.

24         The jury was instructed pursuant to CALCRIM No. 852 as follows:

25

26

27  _____

       [1]  California Evidence Code section 1109, subdivision (a)(1) provides in pertinent part: "Except as otherwise
28  provided..., in a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the
       defendant's commission of other domestic violence is not made inadmissible by Section 1101 if the evidence is not
       inadmissible pursuant to section 352."

The people presented evidence that the defendant committed domestic violence that was not charged in this case.

*Domestic violence* means abuse committed against an adult who is a former cohabitant or former spouse.

*Abuse* means intentionally or recklessly causing or attempting to cause bodily injury, or placing another person in reasonable fear of imminent serious bodily injury to himself or herself or to someone else.

The term *cohabitants* means two unrelated adults living together for a substantial period of time, resulting in some permanency of the relationship. Factors that may determine whether people are cohabiting include, but are not limited to, (1) sexual relations between the parties while sharing the same residence, (2) sharing of income or expenses, (3) joint use or ownership of property, (4) the parties' holding themselves out as husband and wife, (5) the parties' registering as domestic partners, (6) the continuity of the relationship, and (7) the length of the relationship.

You may consider this evidence only if the People have proved by a preponderance of the evidence that the defendant in fact committed the uncharged domestic violence. Proof by a preponderance of the evidence is a different burden from proof beyond a reasonable doubt. A fact is proved by a preponderance of the evidence if you conclude that it is more likely than not that the fact is true.

If the people have not met this burden of proof, you must disregard this evidence entirely.

If you decide that the defendant committed the uncharged domestic violence, you may, but are not required to, conclude from that evidence that the defendant was disposed or inclined to commit domestic violence and, based on that decision, also conclude that the defendant was likely to commit and did commit Count 1-Corporal injury to a spouse, former spouse, and/or roommate; Count 2-Dissuading a witness or crime victim by force or threat; Count 3-Making a criminal threat; Count 4-False imprisonment by violence, menace, fraud, deceit; Count 6-Violation of a protective stay-away order, domestic violence; Count 7-Dissuading a witness or crime victim by force or threat, as charged here. If you conclude that the defendant committed the uncharged domestic violence, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of Count 1-Corporal injury to a spouse, former spouse, and/or roommate; Count 2-Dissuading a witness or crime victim by force or threat; Count 3-Making a criminal threat; Count 4-False imprisonment by violence, menace, fraud, deceit; Count 6-Violation of a protective stay-away order, domestic violence; Count 7-Dissuading a witness or crime victim by force or threat. The People must still prove each element of every charge beyond a reasonable doubt.

Do not consider this evidence for any other purpose.

Lodgment 1, Clerk's Tr. 102-103.

The California Court of Appeal rejected Simmons first contention that the charge of witness intimidation was not an offense involving domestic violence. Lodgment 6 at 3. The

1    Court determined that a reasonable juror could conclude that the victim was not only in fear,

2    but reasonably in fear based on Simmons' direct and persistent threats. *Id.* at 6. The court

3    also determined that the jury could, and did reasonably conclude that Simmons scared both

4    the victim and her mother to the point they elected not to attend court. *Id.* The court held that

5    the Simmons' actions in dissuading the victim from testifying were in the nature of domestic

6    violence[2] and thus the other act evidence could legitimately be considered by the jury with

7    respect to count seven. *Id.*

8         The court also rejected Simmons's second contention that the CALCRIM 852

9    instruction violated his due process rights. *Id.* The Court cited *People v. Reliford*, 29 Cal.4th

10   1007, 1016 (2003) (finding no due process violation in CALJIC No. 2.50.02, which also

11   deals with the manner in which juries can consider evidence of uncharged acts), and *People*

12   *v. Reyes*, 160 Cal.App.4th 246, 250-53 (2008) (holding that the jury instruction permitting

13   consideration of prior acts of domestic violence did not violate due process), in determining

14   that the issues raised by Simmons have been rejected by both the California Supreme Court

15   and California Court of Appeal. *Id.* at 7.

16              **A. Applicable Legal Standard**

17        First, rulings based on an alleged error in the interpretation or application of state law

18   cannot serve as a basis for habeas relief unless the asserted error rises to the level of a federal

19   constitutional violation. *See, e.g., Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Jammal v.*

20   *Van de Kamp*, 926 F.2d 918, 919-20 (9th Cir. 1991) ("the presence or absence of a state law

21   violation is largely beside the point"). It is "well settled that a state court's evidentiary ruling,

22   even if erroneous, is grounds for federal habeas relief only if it renders the state proceedings

23   so fundamentally unfair as to violate due process." *Spivey v. Rocha*, 194 F.3d 971, 977-78

24   (9th Cir. 1999); *see also Larson v. Palmateer*, 515 F.3d 1057, 1065 (9th Cir. 2008) (for

25

26   California Evidence Code section 1109, subdivision (d)(3), defines the term "domestic violence"
27   by reference to section 13700 of the California Penal Code. Section 13700, subdivision (a),
     defines abuse as "intentionally or recklessly causing or attempting to cause bodily injury, or
28   placing another person in reasonable apprehension of imminent serious bodily injury to himself
     or herself, or another."

purposes of federal habeas review, it is "irrelevant" whether or not an evidentiary ruling is correct under state law, the only question is whether the ruling rendered the trial so fundamentally unfair as to violate due process); *Drayden v. White*, 232 F.3d 704, 710 (9th Cir. 2000) ("The improper admission of evidence does not violate the Due Process Clause unless it is clearly prejudicial and 'rendered the trial fundamentally unfair.'") (citation omitted).

In this case, Simmons also contends that the instructional error violated federal due process standards. The California Court of Appeal, however, only provided reasoning based on state law in its decision concluding that the instructional error did not warrant reversal. Lodgment 6 at 6-7. Because no state court provided reasoning in support of its decision to deny Simmons' federal due process claim for instructional error, this Court independently reviews the record to determine whether the state court clearly erred in its application of Supreme Court law in reaching its decision on the merits of the federal claim. *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002) (explaining that when a state court reaches a decision on the merits but provides no reasoning to support its conclusion, the federal court on habeas review must relax AEDPA's strict standard of review and independently review the record to determine whether the state court clearly erred in its application of Supreme Court law). That is, although the Court independently reviews the record, it still defers to the state court's ultimate decision.[3]

Any jury instruction that "reduce[s] the level of proof necessary for the Government to carry its burden ... is plainly inconsistent with the constitutionally rooted presumption of innocence." *Cool v. United States*, 409 U.S. 100, 104 (1972). The fact that the instruction was allegedly incorrect under state law, however, is not a basis for habeas relief. *Estelle*, 502 U.S. at 72 (citing *Marshall v. Lonberger*, 459 U.S. 422, 438 (1983) ("the due process clause does not permit the federal courts to engage in finely tuned review of the wisdom of state evidentiary rules")). To obtain federal collateral relief for errors in the jury charge, a

---

[3] This case does not present a situation where the Court performs a de novo review because unlike a situation where the state court did not reach the merits of the claim–i.e. because of a procedural bar–there is a state court decision on this issue to which to accord deference.

petitioner must show that the disputed instruction by itself so infected the entire trial that the resulting conviction violates due process. *Id.* at 72. The instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. *Id.* In other words, a federal habeas court must evaluate the jury instructions in the context of the overall charge to the jury as a component of the entire jury process. *United States v. Frady*, 456 U.S. 152, 169 (1982).

### B. Application to Simmons' Claim

Simmons has not shown that the instruction infected the trial to the extent that he was denied a fair trial under due process standards. First, the instruction permits, but does not require, the jury to consider evidence that Simmons committed other offenses. Because the instruction was permissive, the jury was not even required to consider such evidence, much less make a finding of guilt based upon it. Rather, the jury was free to accept or reject such evidence, and even if it accepted such evidence as true, to give it any weight it chose.

Second, nothing in the instruction lowered the prosecution's burden of proof. The instruction itself explicitly stated that the prior acts evidence "is not sufficient by itself to prove that [petitioner] is guilty of" the charged offenses. The jury was also separately instructed that it had to be convinced of Simmons' guilt beyond a reasonable doubt. The Court must presume jurors followed the instructions and applied the proper legal standard. *See Richardson v. Marsh*, 481 U.S. 200, 206 (1987).

The California Court of Appeal's decision that CALCRIM 852 did not affect the prosecution's burden to prove Simmons' guilt beyond a reasonable doubt on counts involving domestic violence was not an incorrect application of Supreme Court law. After an independent review of the record and for the reasons stated above, the Court finds that the instruction did not have a substantial and injurious effect on the jury's verdict. Accordingly, Simmons' claim is denied.

### 2. INEFFECTIVE ASSISTANCE OF COUNSEL

Simmons complains that his trial counsel was constitutionally ineffective because he failed to present witnesses; failed to object to a jury instruction; failed to impeach two

witnesses; failed to adequately communicate with Simmons; failed to motion to have Simmons' strike stricken; failed to excuse himself from the case; and made lewd acts and statements at trial. Doc. No. 1 at 7. Respondent argues that Simmons' claim fails as he cannot show an unreasonable application of federal law by the California state courts. Resp. Mem. of P. & A. at 19; Doc. No. 16-1 at 28.

### A. Legal Standard—Ineffective Assistance of Counsel

Simmons' allegations of ineffective assistance of counsel were considered and rejected by the state courts on habeas review. Lodgment 2 at 2-3; Lodgment 12 at 2; Lodgment 14. Therefore, this Court will look to the California Court of Appeal's decision because it was the last reasoned decision pertaining to this ground for relief. *Ylst*, 501 U.S. at 801-806 (1991); *see also Barker v. Fleming*, 423 F.3d 1085, 1091-92 (9th Cir. 2005). Under AEDPA's highly deferential standard of review, this Court evaluates the state court's decision to see if the decision was contrary to or an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d)(1); *Richter*, 131 S.Ct. at 785-86 (applying 28 U.S.C. § 2254(d)(1) to federal habeas review of state court's determination of an ineffective assistance of counsel claim).

On federal habeas review of an ineffective assistance of counsel claim previously adjudicated by a state court, the applicable clearly established Supreme Court law for purposes of AEDPA review is the standard articulated in *Strickland v. Washington*. *Richter*, 131 S.Ct. at 778. As articulated in *Strickland*, the Sixth Amendment guarantees the effective assistance of counsel at trial. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To prevail on a claim of ineffective assistance of counsel, a petitioner must show: (1) counsel's performance was deficient, and (2) that the deficient performance prejudiced petitioner's defense. *Id.* at 688.

Accordingly, the claimant must demonstrate counsel failed to exercise reasonable professional judgment and resulting prejudice. *Id.* at 694. First, the petitioner must show that counsel's performance was deficient, which requires a showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth

1    Amendment. *Id.* at 687. In other words, the petitioner must show that counsel's

2    representation fell below an objective standard of reasonableness, and must identify

3    counsel's alleged acts or omissions that were not the result of reasonable professional

4    judgment considering the circumstances. *Id.* at 688. There is a strong presumption that

5    counsel's conduct fell within the broad range of reasonable professional assistance. *Id.* at

6    690.

7         Second, the petitioner must demonstrate "that there is a reasonable probability that,

8    but for counsel's unprofessional errors, the result of the proceeding would have been

9    different." *Id.* at 694; *see also Richter*, 131 S.Ct. at 792 ("The likelihood of a different result

10   must be substantial, not just conceivable"). "[E]ven a strong case for relief does not mean

11   that state court's contrary conclusion was unreasonble." *Richter*, 131 S.Ct. at 791-92

12   (reversing a Ninth Circuit en banc grant of habeas relief on an ineffective assistance claim

13   for lack of sufficient deference to a state court result).

14        As the Supreme Court reaffirmed in *Richter*, meeting the standard for ineffective

15   assistance of counsel on federal habeas review is extremely difficult:

16            The pivotal question is whether the state court's application of the
             *Strickland* standard was unreasonable. This is different from asking whether
17           defense counsel's performance fell below *Strickland's* standard. Were that
             the inquiry, the analysis would be no different than if, for example, this
18           Court were adjudicating a *Strickland* claim on direct review of a criminal
             conviction in a United States district court. Under AEDPA, though, it is a
19           necessary premise that the two questions are different. For purposes of
             § 2254(d)(1), "an unreasonable application of federal law is different from
20           an incorrect application of federal law." [citation omitted]. A state court
             must be granted a deference and latitude that are not in operation when the
21           case involves review under the *Strickland* standard itself.

22   *Richter*, 131 S.Ct at 785-86.

23        Thus, when a state court has rejected an ineffective assistance of counsel claim, as it

24   has in this case, a federal habeas court's review is "doubly deferential" under AEDPA.

25   *Yarborough v. Gentry*, 540 U.S. 1, 6 (2003). Accordingly, even if a petitioner presents a

26   strong case of ineffective assistance of counsel, this Court may only grant relief if "no

27   fairminded jurist could agree on the correctness of the state court's decision." *Yarborough v.*

28   *Alvarado*, 541 U.S. 652, 664 (2004).

**B. The State Courts Reasonably Denied Simmons' Claim**

Reviewing Simmons' state habeas petition, the Court of Appeal articulated and applied the legal standard for its review of ineffective assistance of counsel as follows:

> Regarding his ineffective assistance of counsel claim, Simmons has not demonstrated that his counsel's performance was deficient or that he was prejudiced. (*See People v. Ochoa* (1998) 19 Cal.4th 353, 445; *accord Strickland v. Washington* (1984) 466 U.S. 668, 687.)

Lodgment 12 at 2.

Simmons first contends that counsel was ineffective for not calling Cheryl Dodd and Brittany Garden as witnesses during the defense case. Doc. No. 1 at 7. To support a claim of ineffective assistance of counsel based on a failure to call witnesses, the petitioner must show the witnesses would have testified in his case. *United States v. Harden*, 846 F.2d 1229, 1231-32 (9th Cir. 1988). Simmons, however, does not explain who Dodd and Garden are, does not state what testimony they would have given, and gives no information about how their testimony would have helped his case.

Second, Simmons faults trial counsel for not challenging CALCRIM No. 852. Doc. No. 1 at 7. As explained by the California Court of Appeal (Lodgment 6 at 6-7), there were no grounds on which to base such a challenge. Counsel is not required to make an unavailing motion. *United States v. Quintero-Barraza*, 78 F.3d 1344, 1349 (9th Cir. 1996).

Third, Simmons contends trial counsel did not properly impeach Erica and Dorothy by asking them the "right questions" during cross-examination. Doc. No. 1 at 7. Simmons, however, has not identified the impeaching evidence or the precise testimony sought to be impeached. Absent a showing that real impeachment evidence was available and could have been, but was not pursued at trial, Simmons cannot establish that the cross-examination fell outside the range of professional competent assistance. *See Villafuerte v. Stewart*, 111 F.3d 616, 631 (9th Cir. 1997) (holding that petitioner failed to identify the impeaching evidence sought to be used during cross-examination and therefore could not demonstrate defective assistance nor prejudice ); *see also Johnson v. Alabama*, 256 F.3d 1156, 1186 (11th Cir. 2001) (holding that absent a showing that real impeachment evidence was available, but was

-17-

1    not pursued at trial, petitioner cannot establish that cross-examination conducted by counsel

2    fell outside the range of professionally competent assistance).

3          Fourth, Simmons claims counsel should have asked the trial court to dismiss his

4    "prior" strike conviction. Doc. No. 1 at 7. Simmons is referring to a motion to strike the prior

5    pursuant to *People v. Superior Court (Romero)*, 13 Cal. 4th 497 (1996). The record, however,

6    is contrary to Simmons' claim. As part of his statement in mitigation, defense counsel did ask

7    the court "to dismiss the strike prior pursuant to *Romero*." Counsel provided argument as to

8    why he felt the court should exercise this option. Lodgment 1, Clerk's Tr. at 162. Counsel

9    also made the same request during sentencing. Lodgment 2, Rep.'s Tr. Vol. 9, 1036-37. The

10   trial court declined to dismiss the strike. *Id.* at 1039-40.

11         Fifth, Simmons claims there was a lack of communication between him and defense

12   counsel, and that counsel hung up on Simmons on more than one occasion. Doc. No. 1 at 7.

13   Simmons has not, however, provided any evidence that the "lack of communication" and

14   telephone hang-ups created difficulty with his trial or changed the outcome of his case. *See*

15   *U.S. v. Rogers*, 769 F.2d 1418, 1425 (9th Cir. 1985) (defendant failed to show any prejudice

16   resulting from counsel's representation).

17         Sixth, and finally, Petitioner argues that his counsel "made lewd acts and statements

18   during [his] trial." Doc. No. 1 at 7. Simmons does not support his allegations with any facts,

19   and a thorough review of the record does not reveal any such conduct by defense counsel.

20         The state court applied the appropriate standard of review as required by *Strickland*,

21   and their decision was also based on a reasonable determination of the facts as presented in

22   the state court proceeding. Simmons has not shown that the California Court of Appeal's

23   denial of his ineffective assistance of counsel claims was objectively unreasonable. Nor has

24   Simmons established that had trial counsel acted differently, it would have been reasonably

25   likely to produce a different result.

26         In addition, this Court cannot properly second-guess trial counsel's tactical choices.

27   *Matylinsky v. Budge*, 577 F.3d 1083, 1092 (9th Cir. 2009). Therefore, this Court cannot

28   conclude that the California Court of Appeal unreasonably applied federal law or

-18-

unreasonably determined the facts as presented when rejecting Simmons' ineffective assistance of counsel claim. Because fairminded jurists could agree on the correctness of the state courts' decision, Simmons is not entitled to habeas relief. 28 U.S.C. § 2254(d); *Strickland*, 466 U.S. at 687; *Alvarado*, 541 U.S. at 664.

### 3.   ILLEGAL SENTENCE ENHANCEMENT

Simmons alleges various sentencing errors which will be considered separately. First, Simmons claims that the counts should have been sentenced concurrently rather than consecutively because the crimes occurred on the same occasion. Doc. No. 1 at 8. Second, Simmons contends that use of his prior convictions to enhance his sentence violated the Double Jeopardy Clause. *Id.* Third, and finally, Simmons contends that his sentence as a second strike offender constituted cruel and unusual punishment. *Id.* Respondent argues that a claim of error in the application of state sentencing law does not present a federal question. Resp. Mem. of P. & A. at 23; Doc. No. 16-1 at 32.

After the verdicts, Simmons admitted allegations that he had served two prior prison terms, had one prior serious felony conviction, and had one prior strike conviction. Lodgment 2, Rep.'s Tr. Vol. 9, 1009-12; Lodgment 1, Clerk's Tr. at 212. On March 28, 2008, the trial court sentenced Simmons to prison for twenty-two years and four months. Lodgment 2, Rep.'s Tr. Vol. 9, 1040-42; Lodgment 1, Clerk's Tr. at 165-66, 216. The sentence consisted of the double upper term of eight years on count 1, a consecutive doubled one-third the midterm of sixteen months on count 5; a doubled consecutive midterm of six years on count 7; a consecutive one year term for Simmons' two prior prison terms; and a consecutive five year term for Simmons' prior serious felony conviction. The sentence on count 6, a misdemeanor, was credited for time served. And the court stayed the sentence on the remaining counts under Cal. Penal Code § 654. Lodgment 2, Rep.'s Tr. Vol. 9, 1040-42; Lodgment 1, Clerk's Tr. 165-66, 216.

In its decision concluding that the sentencing errors did not warrant reversal, the California Court of Appeal only provided reasoning based on state law . Lodgment 12 at 2. Because no state court provided reasoning based on federal law in support of its decision to

deny Simmons' sentencing error claim, the Court independently reviews the record to determine whether the state court clearly erred in its application of Supreme Court law in reaching its decision on the merits of the federal claim. *Pirtle*, 313 F.3d at 1167. That is, although the Court independently reviews the record, it still defers to the state court's ultimate decision.

**A. Simmons is Not Entitled to Habeas Relief Based on His Claim That the Trial Court Erred in Sentencing Concurrently Rather Than Consecutively.**

Simmons claims that the counts should have been sentenced concurrently rather than consecutively because the crimes occurred on the same occasion. Doc. No. 1 at 8. Respondent argues Simmons' claim fails as he cannot show an unreasonable application of federal law by the California state courts and therefore the issue does not present a federal question. Resp. Mem. of P. & A. at 23; Doc. No. 16-1 at 32. In the alternative, Respondent argues that even if the court concludes that Simmons' sentencing claim presents a federal question, it should be denied because there was no "clearly established federal law" for the state courts to apply. Resp. Mem. of P. & A. at 24; Doc. No. 16-1 at 33.

**1. Applicable Legal Standard**

"Neither an alleged abuse of discretion by the trial court in choosing consecutive sentences, nor the trial court's alleged failure to list reasons for imposing consecutive sentences, can form the basis for federal habeas relief." *Souch v. Schaivo*, 289 F.3d 616, 623 (9th Cir. 2002) (citing *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (rejecting petitioner's claim that a state court misapplied its own aggravating circumstance because "federal habeas relief does not lie for errors of state law"). In *Miller v. Vasquez*, 868 F.2d 1116, 1118-19 (9th Cir. 1989), the Ninth Circuit refused to review whether a California state court had properly determined that a defendant's prior conviction qualified as a "serious felony" within the meaning of the state statutory scheme. The Court did not reach the merits of the claim, holding that federal habeas is not available for alleged error in interpreting and applying state law. *Id.*

## 2. Application to Simmons' Claim

As explained above, the trial court's decision to impose consecutive sentences does not form a basis for habeas relief because it is a matter of state law. *See Souch*, 289 F.3d at 623; *Lewis*, 497 U.S. at 780; *Miller*, 868 F.2d at 1118-19. Even if Simmons' claim presents a federal question, it fails under AEDPA because there was no "clearly established federal law" for the state courts to apply.[4] *See Brewer v. Hall*, 378 F.3d 952, 955 (9th Cir. 2004). "If no Supreme Court precedent creates clearly established federal law relating to the legal issue the habeas petitioner raised in state court, the state court's decision cannot be contrary to or an unreasonable application of clearly established federal law." *Id.* There is no United States Supreme Court authority addressing a state trial court's discretionary authority to impose sentences consecutively as opposed to concurrently. Therefore, Simmons' ineffective assistance of counsel claim fails under AEDPA.

### B. Simmons is Not Entitled to Habeas Relief Based on His Claim That The Use of His Prior Convictions to Enhance his Sentence Violated the Double Jeopardy Clause.

Simmons contends that the use of his prior convictions to enhance his sentence violated the Double Jeopardy Clause. Doc. No. 1 at 8. Respondent argues that Simmons was on notice that he faced a stiffened penalty if he committed another felony, therefore, application of California's Three Strikes Law to enhance Simmons' sentence did not violate his right to due process of law or principles of fundamental fairness. Resp. Mem. of P. & A. at 25; Doc. No. 16-1 at 34.

### 1. Applicable Legal Standard

The Fifth Amendment provides, in part, that no "person be subject for the same offense to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. The double jeopardy clause "protects against a second prosecution for the same offense after acquittal. It also protects against a second prosecution for the same offense after conviction. And it

---

[4] Under 28 U.S.C. § 2254(d)(1), this Court cannot grant Simmons' habeas petition "with respect to any claim that was adjudicated on the merits" in the California state court proceedings unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."

protects against multiple punishments for the same offense. *U.S. v. Wilson*, 420 U.S. 332, 343 (1975) (quoting *North Carolina v. Pearce*, 395 U.S. 711 (1969)). Criminal recidivist statutes, however, have been repeatedly upheld "against contentions that they violate constitutional strictures dealing with double jeopardy, ex post facto laws, cruel and unusual punishment, due process, equal protection and privileges and immunities." *Spencer v. Texas*, 385 U.S. 554, 560 (1967). A charge under a recidivism statute does not state a separate offense, but goes to punishment only. *Parke v. Raley*, 506 U.S. 20, 27 (1992).

### 2. Application to Simmons' Claim

The Double Jeopardy Clause was not intended to protect against an enhanced punishment under a state's recidivism statute. *See Wilson*, 420 U.S. at 332. Because recidivism statutes have been repeatedly upheld against claims of constitutional violation, the application of California's Three Strikes Law to enhance Simmons' punishment did not violate his Eighth Amendment right to not be prosecuted for the same conviction twice.

### C. Simmons' is Not Entitled to Habeas Relief Based on His Claim That His Sentence as a Second Strike Offender Constituted Cruel and Unusual Punishment.

Simmons contends that his sentence as a second strike offender constituted cruel and unusual punishment. Doc. No. 1 at 8. Respondent argues that given Simmons' criminal record, Simmons' sentence was not "grossly disproportionate" to the crime. Resp. Mem. of P. & A. at 26; Doc. No. 16-1 at 35.

### 1. Applicable Legal Standard

The Eighth Amendment provides, in part, that there "shall not be... cruel and unusual punishments inflicted." U.S. CONST. amend. VIII. "The Eighth Amendment does not require strict proportionality between crime and sentence. Rather it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Ewing v. California*, 538 U.S. 11, 23 (2003) (quoting Justice Kennedy's concurrence in *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1990). The Court in *Ewing* also adopted the proportionality principle set forth by Justice Kennedy in *Harmelin* as a guide for the application of the Eighth Amendment). Based on these principles, the United States Supreme Court has adopted the following test for

determining whether a specific sentence for a term of years is grossly disproportionate to a defendant's crime:

> A court must begin by comparing the gravity of the offense and the severity of the sentence. In the rare case in which this threshold comparison ... leads to an inference of gross disproportionality" the court should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions. If this comparative analysis validates an initial judgment that the sentence is grossly disproportionate, the sentence is cruel and unusual.

*Graham v. Florida*, — U.S. —, 130 S. Ct. 2011, 2022 (2010) (internal quotations and citations omitted).

In reviewing a sentence under a recidivist statute, a federal court looks not only at whether the sentence is justified by the current offense, but also whether it is supported by the individual's criminal history. *See Ramirez v. Castro*, 365 F.3d 755, 768 (9th Cir. 2004). The court must take into account "the government's interest not only in punishing the offense of conviction, but also its interest 'in dealing in a harsher manner with those who by repeated criminal acts have shown that they are simply incapable of conforming to the norms of society as established by its criminal law.'" *United States v. Bland*, 961 F.2d 123, 129 (9th Cir. 1992) (quoting *Rummel v. Estelle*, 445 U.S. 263, 276 (1980)). A rational legislative judgment, that offenders who have committed serious or violent felonies and who continue to commit felonies must be incapacitated, is entitled to deference. *Ewing*, 538 U.S. at 30.

## 2. Application to Simmons' Claim

As detailed above, this case involved several serious and violent crimes. Additionally, Simmons criminal history began in 1985, when he was only 18 years old. His offenses include convictions for falsely reporting a crime, possession of a loaded weapon, dissuading a witness by means of force, inflicting corporal injury on a co-habitant, possession of narcotics, false imprisonment by violence, vehicle theft, and battery on a child. Lodgment 1, Clerk's Tr. at 145-149.  Given the gravity of the offenses, Simmons' extensive criminal record, and the deference accorded to recidivist statutes, Simmons' fails to raise an inference of gross disproportionality between the sentence and the crimes committed. *See Graham*, 130

S. Ct. at 2022. Therefore, Simmons is not entitled to habeas relief on grounds that his sentence as a second strike offender constituted cruel and unusual punishment.

### 4.   COMPOSITION OF JURY VENIRE

Simmons contends that he was denied his Due Process and Equal Protection rights because there were no African-Americans in the pool of jurors called to serve on his case and therefore, the venire did not constitute a representative cross-section of the community. Doc. No. 1 at 9. Respondent argues that Simmons' claim fails because he cannot show an unreasonable application of federal law. Resp. Mem. of P. & A. at 26; Doc. No. 16-1 at 35.

### A. Procedural and Factual Background

During a break in jury selection, defense counsel noted that there were no African-Americans in the jury venire. Lodgment 2, Augmented Rep.'s Tr. Vol. 2, 186-87. Counsel moved to dismiss the entire panel, alleging that in his "understanding," ten percent of the eligible jurors in San Diego County are African-American. The prosecutor objected, noting that the panel was selected randomly. *Id.* at 187. The court asked defense counsel how he arrived at the figure of ten percent. *Id.* Counsel responded that he had obtained the figure from unrelated litigation and that he would obtain the true figure over the lunch hour. *Id.* at 188.

After a brief recess, the court noted that jury panel members must be selected randomly from a fair cross-section of the population of the area served by the court. *Id.* at 189. Defense counsel agreed with the court, and added that he had no reason to believe "that the cross-section from which they were selected wasn't appropriately drawn[.]" *Id.* The court asked counsel if he contended that African-Americans were improperly exempted from jury service. *Id.* at 189-90. Counsel responded that he did not. *Id.* The court stated that the next issue was a consideration of the right to jurors from a fair cross-section of the community. The court asked counsel if he was sticking with the ten percent figure. *Id.* at 191. Counsel stated that he felt more comfortable with a number between seven and ten percent. *Id.* The court disagreed, indicating that the number it had received was six percent. *Id.* at 191-92.

The court then cited *People v. Crittenden*, 9 Cal. 4th 83 (1994), stating that while a defendant does not have a right to a jury that mirrored the demographic composition of the population or included members of any particular group of individuals, he is constitutionally entitled to a jury panel as close as random selection permitted. *Id.* at 192. The court noted, to demonstrate a violation of the cross-section requirement, the defendant had to show: (1) the group was a distinctive one in the community; (2) the representation of the group in jury panels was not fair and reasonable in relation to the number of such persons in the community; and (3) the under-representation was due to systemic exclusion of the group in the jury selection process. *Id.* at 193-94. The court asked defense counsel if he could show the third prong, systemic exclusion. Counsel responded that he could not. *Id.* at 194. The court told counsel that under those circumstances, he had not made a prima facie showing of a constitutional violation, and denied the motion to discharge the jury panel. *Id.* at 196.

### B. Applicable Legal Standard

The California Court of Appeal only provided reasoning based on state law in its decision concluding that the composition of jury venire did not warrant reversal. Lodgment 12 at 2. Because no state court provided reasoning based on federal law in support of its decision to deny Simmons' sentencing error claim, the Court independently reviews the record to determine whether the state court clearly erred in its application of Supreme Court law in reaching its decision on the merits of the federal claim. *Pirtle*, 313 F.3d at 1167. Again, although the Court independently reviews the record, it still defers to the state court's ultimate decision.

Under the Sixth Amendment, a criminal defendant is entitled to a jury pool representing a fair cross-section of the community. *Holland v. Illinois*, 493 U.S. 474, 476 (1990). "In order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systemic exclusion of the group in the jury-selection

1  process" *Duren v. Missouri*, 439 U.S. 357, 364 (1979). It is unnecessary to prove

2  discriminatory intent or that the person asserting the claim is a member of the "distinct,"

3  excluded group. *United States v. Esquivel*, 88 F.3d 722, 726 (9th Cir. 1996).

4      The Ninth Circuit has adopted the "absolute disparity" test for measuring the

5  representativeness of a distinctive group in the jury pool. *Esquivel*, 88 F.3d at 726.

6  "[A]bsolute disparity" is determined by subtracting the percentage of the group in the jury

7  pool from that group's percentage of the relevant total population. *Id.* The court in *Esquivel*

8  determined that an absolute disparity of only 4.9 percent was insufficient to find a Sixth

9  Amendment violation. *Id.*; *see also United States v. Suttiswad*, 629 F.2d 645, 649 (9th Cir.

10  1982) (7.7 percent absolute disparity deemed unsubstantial and constitutionally permissible).

11      To establish a prima facie equal protection case with respect to the jury venire

12  selection procedure, the petitioner must: (1) show that the group is one that is a recognizable,

13  distinct class, singled out for different treatment under the laws, as written or as applied; (2)

14  prove the degree of under representation by comparing the proportion of the group in the

15  total population to the proportion called to serve as jurors over a significant period of time;

16  and (3) show a selection procedure that is susceptible to abuse or is not racially neutral by a

17  statistical showing. *United States v. Rodriguez-Lara*, 421 F.3d 932, 940 (9th Cir. 2005)

18  (citing *Castaneda v. Partida*, 430 U.S. 482, 494 (1977)). Together, these elements raise an

19  inference of discriminatory intent. *Rodriguez-Lara*, 421 F.3d at 940; *Thomas v. Borg*, 159

20  F.3d 1147, 1150 (9th Cir. 1998)

21                    **C. Application to Simmons' Claim**

22

23      Simmons has not established a prima facie violation of the fair cross section

24  requirement. *See Duren*, 439 U.S. at 364. Simmons did not meet the second prong of the

25  *Duren* test. *Id.* Simmons guesses that the disparity between the percentage of African-

26  Americans in the jury pool and the percentage of African-Americans in San Diego County is

27  seven to ten percent. Doc. No. 1 at 8. Simmons, however, provides no evidence to support

28  this assertion. The state trial court placed the figure at six percent. Lodgment 2, Aug. Rep.'s

Tr. Vol. 2, 191-92. Under the Ninth Circuit's holding in *Suttiswald*, six percent is too low to find a Sixth Amendment violation. 629 F.2d at 649.

Simmons has also not met the third prong of the *Duren* Test. *See Duren*, 439 U.S. at 364. Under the third prong, Simmons must show that the under-representation was due to systemic exclusion of the group in the jury selection process. *Id.* Simmons provides no evidence supporting a conclusion that there was systemic exclusion in the jury selection process. Furthermore, defense counsel for Simmons admitted during the hearing on the motion that there was no systemic exclusion in the jury selection process; the process was entirely random. Lodgment 2, Aug. Rep.'s Tr. Vol. 2, 189,190, 194. Accordingly, there was no violation of Simmons' due process rights.

With respect to Simmons' equal protection claim, Simmons has provided no evidence that would suggest a prima facie equal protection case under *Rodriguez-Lara*. 421 F.3d at 940. Simmons has not made the necessary showing to raise an inference of discriminatory intent. *Id.* Accordingly, there was no violation of Simmons' due process rights. For the reasons stated, the Court recommends that Simmons' claim for relief based on jury venire be denied.

## VII.  CONCLUSION

Based on the above stated reasons, the undersigned recommends that the assigned district judge: (1) approve and adopt this Report and Recommendation and (2) direct that judgment be entered **DENYING** Simmons' petition for writ of habeas corpus.

This Report and Recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to 28 U.S.C. § 636 (b)(1).

**IT IS ORDERED** that no later than **17** days after receiving a copy of this Report & Recommendation, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

///

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties within **14** days of being served with objections

**IT IS SO ORDERED.**

DATED:  October 10, 2012

Hon. Bernard G. Skomal
U.S. Magistrate Judge
United States District Court